UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DAVID L. DRAKE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:22-CV-21-ACL |
| ) | |
| OLD DOMINION FREIGHT LINE, ) | |
| INC., et al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Complaint of Plaintiffs David L. Drake and Rebecca Ann Drake against Defendants Old Dominion Freight Line, Inc. ("Old Dominion") and its employee Toreano Barnes, following an accident involving a semi-truck operated by Barnes. (Doc. 1.) Presently pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 80.) Plaintiffs oppose the Motion. (Doc. 88.) This matter is fully briefed and ready for disposition.

**I.     Background**

Plaintiffs filed this action based on diversity of citizenship under 28 U.S.C. § 1332(a)(1). The Complaint alleges two counts arising from the accident between Plaintiff David Drake and Defendant Barnes that occurred on May 4, 2017. In Count I, David Drake asserts a negligence claim against Defendants Old Dominion and Barnes. In Count II, Plaintiff Rebecca A. Drake alleges a loss of consortium claim against Defendants Old Dominion and Barnes. Plaintiffs' claims against Old Dominion are based on the doctrine of *respondeat superior*. As relief, Plaintiffs request compensatory damages and punitive damages for each claim, as well as post-judgment interest, costs, and attorney fees.

1

Plaintiffs allege that Barnes negligently operated his semi-truck by failing to keep a careful lookout, driving in a reckless manner without due care, failing to yield to oncoming traffic, failing to yield the right of way to Drake, colliding with Drake's vehicle, and failing to use appropriate evasive procedures to avoid the collision.  They contend that Defendants' actions and conduct as alleged were "willful and wanton in that Defendants showed an utter indifference to, or conscious disregard for, Plaintiff David L. Drake's safety and the safety of others…" (Doc. 1 at 4.)

Defendants previously filed a Motion to Dismiss, in which they argued that Plaintiffs' claims for punitive damages should be dismissed because Plaintiffs "allege garden variety negligence."  (Doc. 12 at 2.)  The Court construed Defendants' Motion as a Motion to Strike under Rule 12(f) and denied the Motion, finding Defendants had not shown that there was a statutory or other bar to punitive damages sufficient to warrant the extreme measure of striking Plaintiffs' request for punitive damages.  (Doc. 24.)

In the instant Motion for Summary Judgment, Defendants request that the Court enter partial summary judgment in their favor on Plaintiffs' claims for punitive damages, because Defendants' alleged actions do not exhibit a complete indifference to, or conscious disregard for, the safety of others.  They next argue that they are entitled to summary judgment on Plaintiffs' claims for negligence against both Defendants because the undisputed facts show that Drake caused the underlying collision.

Plaintiffs respond that there is a fact dispute between Barnes' claim "that he could not see Drake before he made the left turn that caused the crash, and Drake's testimony that establishes that Barnes could see Drake before Barnes made his left turn and crossed in front of Drake." (Doc. 88 at 1-2.)  Plaintiffs argue that Defendants are therefore not entitled to summary judgment

2

on the punitive damages claim or the negligence claim.

II.     **Summary Judgment Standard**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the burden of showing a lack of a genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986).  To survive a motion for summary judgment, the nonmoving party must substantiate her allegations with "sufficient probative evidence that would permit a finding in her favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quotation omitted).

III.    **Facts[1]**

Defendant Barnes was operating a semi-truck for his employer, Old Dominion, on May 4, 2017, when he crossed Highway U.S. 60 in Shannon County, Missouri, and collided with a vehicle driven by Drake.  Drake was operating a 1994 Ford Escort, and was driving eastbound on Highway 60.  Highway 60 is a two-lane highway with a divided median.  Barnes was traveling

---

[1] The Court's recitation of the relevant facts is taken from the Complaint, the parties' statements of uncontroverted facts, their responses thereto, and the exhibits filed by the parties.

3

westbound on Highway 60 and turned left across eastbound Highway 60 onto southbound Missouri 99, which intersected Highway 60. Barnes' tractor-trailer consisted of a truck-tractor, two trailers, and a dolly. Drake collided with the rearmost trailer connected to Barnes' truck-tractor.

Drake denies that mechanical failures caused or contributed to cause the accident. He testified that his speed approaching the intersection was less than 55 miles an hour. Drake testified that he had a clear view of Barnes and his vehicle as Barnes was crossing the road. Barnes testified that he perceived no oncoming traffic. Drake began to decelerate when Barnes crossed the median, and was traveling at a speed of 35 to 40 miles per hour at the time of impact. He applied his brakes but his brakes locked up. Drake was talking on his cellular phone—with the phone located either on a pillow close to him or in his pocket using the speaker function—at the time of the collision. Barnes testified that he did not see Drake before going through the intersection.

## IV.   Discussion

As previously stated, Defendants argue they are entitled to judgment as a matter of law on Plaintiffs' claim for punitive damages and on their negligence claim. The Court will address these claims in turn.

### A. Punitive Damages

Defendants argue that they are entitled to partial summary judgment on Plaintiffs' claims for punitive damages because Plaintiffs have not presented evidence establishing the requisite evil motive or reckless indifference.

"Ordinarily [punitive] damages are not recoverable in actions for negligence, because negligence, a mere omission of the duty to exercise care, is the antithesis of willful or intentional

4

conduct." *Hoover's Dairy, Inc. v. Mid–Am. Dairymen, Inc./Special Prods. Inc.*, 700 S.W.2d 426, 435 (Mo.1985) (en banc) (citations omitted); s*ee also Scott v. Dyno Nobel, Inc.*, 108 F.4th 615, 632 (8th Cir. 2024) (applying Missouri law).  Nevertheless, "when the defendant knew or had reason to know that there was a high degree of probability that the action would result in injury," punitive damages may be appropriate in a negligence action.  *Hoover's Dairy*, 700 S.W.2d at 436 (collecting cases).  "The defendant's conduct must be tantamount to intentional wrongdoing where the natural and probable consequence of the conduct is injury.  With such a showing, a plaintiff can recover for aggravating circumstances based upon the defendant's complete indifference to or conscious disregard for the safety of others." *Lopez v. Three Rivers Elec. Co-op, Inc.,* 26 S.W.3d 151, 160 (Mo. 2000) (citations omitted).  The standard of proof of a defendant's required culpable mental state is clear and convincing evidence.  *May v. Nationstar Mortgage, LLC*, 852 F.3d 806, 814 (8th Cir. 2017).

Under Missouri law, evidence of failure to follow motor carrier regulations and industry standards is permitted to support an award of punitive damages against commercial motor carriers.  In *Lopez*, the Missouri Supreme Court ruled that a "knowing violat[ion of] a statute, regulation, or clear industry standard designed to prevent the type of injury occurred" is a factor to be considered when submitting a jury instruction on punitive damages.  26 S.W.3d at 160.  *See also Coon v. Am. Compressed Steel, Inc.,* 207 S.W.3d 629, 638 (Mo. Ct. App. 2006) (sustaining award of punitive damages because the motor carrier had shown a conscious disregard for public safety in failing to comply with federal and state motor carrier regulations and industry standards); *Trotter v. B & W Cartage Co.,* 2006 WL 1004882 (S.D. Ill. April 13, 2006) (applying Missouri law) ("The evidence of record also suggests that the conduct of B & W employees like

5

the managers of the company's terminals in Clayton, Ohio and Gary, Indiana, was such as to send a message to drivers that hours of service violations were acceptable conduct.").

Here, Plaintiffs argue that Drake's testimony shows that Barnes acted with a complete indifference to or conscious disregard for the safety of others when he failed to look for oncoming traffic before entering the U.S. Highway 60 eastbound lanes. Plaintiffs cite to Missouri Revised Statute § 304.351, which provides that vehicles intending to turn left shall yield the right-of-way "to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard." Mo. Rev. Stat. § 304.351.3. Plaintiffs argue that Drake could "clearly see Barnes as Barnes crossed the median without hesitation and began to cross the eastbound lanes of U.S. Highway 60 in front of Mr. Drake." (Doc. 88 at 5.) They contend that Drake's vehicle was so close to Barnes that Drake was "able to see Barnes' head and noted that Barnes never looked toward him." *Id.* Because Drake could clearly see Barnes, Plaintiffs contend that Barnes necessarily could see Drake's vehicle approaching him "had he conducted a proper visual search before executing his left turn in front of Drake." *Id.* at 6. Plaintiffs argue that Barnes either knowingly did not look for oncoming traffic, consistent with Drake's testimony, which he knew would lead to injury; or he did look and saw Drake but proceeded anyway, which constitutes clear reckless indifference.

Plaintiffs further argue that Barnes and Old Dominion consciously failed to adhere to industry regulations and standards. In support of this claim, Plaintiffs cite the testimony of their retained trucking expert, Linda Day,[2] that Barnes failed to yield the right-of-way by passing in front of Drake. They also note that Ms. Day expressed the opinion that Barnes failed to adhere

---

[2] Ms. Day's testimony is the subject of a Daubert motion presently pending before the Court. (Doc. ) Ms. Day's testimony does not affect the outcome of the instant Motion for Summary Judgment.

6

to the following industry standards: the responsibility to maintain a proper visual search and to recognize hazards and potential conflicts; safely manage his speed and space around his vehicle; adhere to industry standards and safe driving practices as it relates to left-hand turns with double trailers; and operate with due caution as it relates to accident avoidance.

Although Plaintiffs rely upon Ms. Day's testimony, Ms. Day testified that she agreed that Barnes did *not* violate the Federal Motor Vehicle Carrier Safety Regulations ("FMCSRs"). (Doc. 77-1 at 26.)  She explained that the FMCSRs "do not encompass a left turn." *Id.*  Ms. Day testified that, based on the police report that indicates Barnes failed to yield, she believes Barnes violated state law requiring yielding the right-of-way.  *Id.*  She stated that she had no evidence that Barnes violated the "Smith System"—a defensive driving standard in the industry—other than the fact a collision occurred. *Id.* at 36, 39.  She further testified that Barnes did not violate FMCSRs pertaining to hours-of-service limitations on May 4, 2017, as documented in his electronic driver's logs. *Id.* at 11.  Plaintiffs argue that Barnes failed to adhere to sections of the Missouri Commercial Driver's License ("CDL") manual, but Ms. Day admitted that the CDL manual does not specifically address making left turns when pulling two and three trailers. *Id.* at 30.

The Eighth Circuit recently elucidated the standard of proof as to conduct underlying punitive damage awards in *Scott*.  There, the husband and wife plaintiffs brought an action against a nitric acid plant operator alleging the husband suffered serious injuries when he was exposed to a cloud of toxic gas negligently emitted from the defendant's plant.  108 F.4th at 622. The jury found in favor of plaintiffs and awarded the plaintiff $30 million in punitive damages on his negligence claim. *Id.* at 623.  The Eighth Circuit reversed the award of punitive damages, holding the plaintiffs submitted insufficient evidence that defendant acted with the requisite

7

mental state. *Id.* The Court acknowledged that the plaintiff's expert testified that the defendant did not follow risk management procedures required by a "well-recognized industry safety standard," which was "evidence at least suggesting conscious disregard for the safety of others." *Id.* at 633. Although the plaintiffs had submitted sufficient evidence to prove the elements of their negligence claim,

> what is missing is evidence Dyno acted with "such reckless indifference to the rights of others that the law will imply that an injury resulting from it was intentionally inflicted." *Alack*, 923 S.W.2d at 339. Nor was there evidence Dyno "knew or had reason to know that there was a *high degree of probability* that [its startup] action would *result in injury*." *Hoover's Dairy*, 700 S.W.2d at 436 (emphasis in original). Without proof of the mental state that has long been required for the recovery of punitive damages under Missouri law, the award of punitive damages in this case must be reversed.

*Id.* at 633-34 (emphasis in original).

Here, even with all factual inferences drawn in their favor, Plaintiffs have not presented any evidence upon which the Court can conclude that clear and convincing evidence would support a finding that Barnes acted with reckless disregard for the safety of others under the circumstances. Assuming Drake's account of the accident is true, Barnes merely did not see Drake's vehicle when Barnes was crossing the intersection. Plaintiffs do not allege any facts suggesting Barnes engaged in any reckless conduct that resulted in his failure to see Drake. For example, Drake does not claim that Barnes was distracted by any activity inside his cab at the time of the accident. *Cf. Mason v. C.R. Eng., Inc.*, No. 4:18-CV-00651 JCH, 2019 WL 5394565, at *3–4 (E.D. Mo. Oct. 22, 2019) (finding jury question existed as to whether defendant's conduct was "reckless enough to impose punitive damages" when defendant truck driver testified he looked down due to "commotion inside the cab" and "did not know how far he traveled while looking down.").

8

Drake's alleged conduct of failing to maintain a proper visual search prior to making a left turn is tantamount to negligence. In fact, Plaintiffs acknowledge this in their own statement of facts: "When a commercial vehicle operator either fails to look or decides to proceed through an intersection despite oncoming traffic *it is a negligent* or intentional violation of basic safety rules…" (Doc. 89, p. 21, at ¶ 44) (emphasis added). Further, there is no evidence before the Court demonstrating that Barnes violated FMCSRs or a specific industry standard.

For these reasons, the Court concludes there is no genuine issue of material fact based upon which Plaintiffs could show a submissible claim for punitive damages. Thus, Defendants are entitled to judgment as a matter of law on the issue of punitive damages.

**B.  Negligence**

Defendants also contend they are entitled to summary judgment on Plaintiffs' negligence claim, because Plaintiffs cannot establish that Defendants breached a duty of care. They contend that the undisputed material facts establish that *Drake*—not Barnes—caused the accident.

Plaintiffs respond that they have presented sufficient evidence to support their claim that Barnes failed to keep a careful look out and failed to yield the right of way. They argue that there is a fundamental fact dispute regarding whether Barnes saw or could have seen Drake to avoid the collision, which precludes summary judgment. The undersigned agrees.

Under Missouri law, a plaintiff must prove three elements to prevail on a negligence claim: (1) that the defendant owed a duty of care to the plaintiff; (2) that the defendant breached that duty; and (3) that the defendant's breach proximately caused the plaintiff's injury. *Principal Nat'l Life Ins. Co. v. Rothenberg*, 70 F.4th 1046, 1056 (8th Cir. 2023) (quoting *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. 2018) (en banc)).

9

Defendants argue Plaintiffs cannot establish that Defendants breached a duty of care to Plaintiffs. Under Missouri law "[e]very motorist entering an intersection has a duty to exercise the highest degree of care to maintain a careful lookout both ahead and laterally." *Rill v. Trautman,* 950 F. Supp. 268, 272 (E.D. Mo. 1996) (citing *Witt v. Peterson,* 310 S.W.2d 857, 860 (Mo. 1958)). "To fulfill this duty, [a] defendant '[is] required to look in such an observant manner as to enable him to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances.'" *Id.* (quoting *Joffe v. Beatrice Foods Co.,* 341 S.W.2d 880, 884 (Mo. Ct. App. 1960)). The court further explained in *Hudson v. Whiteside,* 34 S.W.3d 420, 427 (Mo. Ct. App. 2000):

> "This duty is not fulfilled by 'obeying a traffic signal and then proceeding into the intersection without making careful observations to determine whether there is no cross traffic in or so near to the intersection as to constitute an immediate danger.'" *Riscaldante v. Melton,* 927 S.W.2d 899, 902 (Mo. App. 1996). To make a submissible case for failure to keep a careful lookout, the plaintiff must establish "that the [driver] saw or could have seen [the plaintiff] in time to have avoided the collision." *Id.* In determining what the defendant saw or could have seen, the defendant is "held to have seen what looking would reveal." *Witt v. Peterson,* 310 S.W.2d 857, 860 (Mo. 1958).

With regard to Drake's alleged negligence, the Missouri Supreme Court in *Gustafson v. Benda,* 661 S.W.2d 11, 15 (Mo. 1983) (en banc), adopted the principle of pure comparative fault in accordance with the Uniform Comparative Fault Act, § § 1-6. As explained by the court in *Rill*, under the pure comparative fault doctrine:

> [T]he injured party's own negligence is compared to that of the negligence of defendant to determine whether any damages awarded should be diminished in proportion to the amount of negligence attributable to that plaintiff. *Cornell v. Texaco, Inc.,* 712 S.W.2d 680, 682 (Mo. 1986) (en banc). Comparative fault is an affirmative defense in which the defendant must prove that the actions or omissions of the plaintiff contributed to the plaintiff's loss to negate or reduce the defendant's legal responsibility. *Business Men's Assurance Co. v. Graham,* 891 S.W.2d 438, 447 (Mo. Ct. App. 1994). The parties in a negligence case have the right to have their case submitted to a jury under comparative fault principles if

10

>   there exists substantial evidence, not mere speculation or conjecture, that plaintiff's conduct was a contributing cause of her damages. *Hughes v. Palermo,* 911 S.W.2d 673, 674 (Mo. Ct. App. 1995).

950 F. Supp. at 271.

Drake testified that he could clearly see Barnes as Barnes exited the median without hesitation and began to cross the eastbound lanes of Highway 60 in front of Drake. (Doc. 89-5 at pp. 33, 42.) He stated that Barnes, "didn't even look my way and he never hesitated when he—when he pulled through. He didn't stop at the stop sign. He never hesitated." *Id.* at 33. Drake testified that he began to decelerate as he saw Barnes cross the median, and applied his brakes, but there was not much distance between the two vehicles. *Id.* at 43. He testified that he did everything he could to avoid the accident, and it would not have mattered if he swerved because Barnes tractor-trailer was taking up the entire roadway. *Id.* at 56.

Defendants argue that the undisputed material facts establish that Drake caused the accident. They state that Drake admitted that he had a good visual of Barnes, but he did not apply his brakes until after Barnes' tractor-trailers had entered the intersection. Defendants, relying on the testimony of their expert Fred Semke, contend that if Drake was traveling at 40 miles per hour before the collision, his vehicle would have been approximately 860 feet from the collision area. (Doc. 81-6 at 14-15.) Traveling at 40 miles per hour, Drake had approximately 13.6 seconds to apply his brakes or change lanes but failed to do so. *Id.* Defendants contend that Plaintiffs have not established that Barnes could have known there was a reasonable likelihood of collision in time to take evasive measure because he could not have anticipated that Drake would fail to exercise due care in operating his vehicle. They therefore argue that Defendants did not breach a duty of care owed to Plaintiffs.

As Plaintiffs point out, Mr. Semke's opinion is based on the testimony of Barnes that Drake's vehicle was far enough away that it was not visible to Barnes and that Barnes looked properly before starting his turn. (Doc. 89-7 at 32-33, 36-37.) Plaintiffs further point out that Mr. Semke assumed Drake was traveling at a consistent speed of 40 miles per hour, which is inconsistent with his testimony that he was traveling between 35 and 40 miles per hour and decelerated after seeing Barnes in the median. Specifically, Drake testified that he "wasn't going faster than 55," and was traveling at a speed of "probably 35 to 40" miles per hour. (Doc. 89-5 at 33.)

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that genuine issues of material fact exist precluding summary judgment on the issue of Barnes' negligence. There is a genuine factual dispute as to whether Barnes could see Drake's vehicle at the time he made his turn. The speed at which Drake was traveling is also disputed, which impacts the calculation of the distance between the two vehicles and the amount of time Drake had to react to avoid the collision. As such, factual issues exist as to whether Barnes breached his duty to Drake by failing to keep a careful look out and failing to yield the right of way. A jury will resolve these factual issues in determining whether Barnes is liable for the accident or, as Defendants allege, Drake's alleged negligence was the sole cause of the collision. Thus, Defendants' Motion for Summary Judgment on Plaintiffs' negligence claim will be denied.

## Conclusion

The Court finds for the reasons set forth above that summary judgment should be granted in Defendants' favor on the issue of punitive damages. The Court further finds that issues of material fact exist precluding summary judgment on the issue of Defendants' negligence. Thus, the Court will grant Defendants' Motion for Summary Judgment in part.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 80) is **granted in part** and **denied in part**, as discussed above.  A separate Partial Judgment in favor of Defendants will accompany this Memorandum and Order.

      /s/ Abbie Crites-Leoni
      ABBIE CRITES-LEONI
      UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of November, 2024.